## THE STATE OF IOWA;

BURLINGTON, MAY TERM, A. D. 1849;

In the third year of the State.

PRESENT:

HON. JOSEPH WILLIAMS, CHIEF JUSTICE;
" JOHN F. KINNEY, } JUDGES.
" GEORGE GREENE, }

———•♦♦———

### HUGHES v. MILLER;

When a nonsuit or default is set aside, notice must be served on the party at least six days before the new trial. But this notice may be waived by general appearance of the party.

Party cannot object to defective notice after he consents to have a jury called.

A judgment by default for costs, may be set aside and the entire case re-adjudicated.

A trial of the right of property cannot be had, under the statute, after the property has been sold and possession passed to a third person, by virtue of legal process.

In a proceeding to try the right of property taken on execution; a judgment by default against the claimant will authorise the officer to proceed with the sale.

*Error to Lee District Court.*

*Opinion by* WILLIAMS, C. J. This action was instituted by James Miller, by his agent W. M. Andrews, against

Ross B. Hughes, under the provisions of the statute for the trial of the right of property seized under execution. Rev. Stat. 331.

The facts of the case are briefly set forth in an agreement of the attorneys and the bill of exceptions. The agreement of the attorneys is as follows:

"It is agreed to admit on this trial as evidence, that there was a judgment on the docket of Zadock Smith, a justice of the peace of Lee county, in favor of Ross B. Hughes and against William M. Andrews, on which execution issued and was levied upon the buggy in dispute. That claimant Miller on his trial was nonsuited as mentioned in the justice's transcript. That on the sixth day of March, 1847, the said nonsuit was ordered, and on the 8th day of March, 1847, the buggy was sold under the levy aforesaid to Callowhill E. Stone, and possession given by the constable; and that on the eleventh of March, 1847, nonsuit was set aside and a new trial granted, as set forth in said transcript." April 29th, 1848.

The first error complained of in the proceedings below, is that, "The summons issued by the justice was not served six days before the return day thereof, as required by the statute."

Among other proceedings copied into the bill of exceptions, is the constable's return, as endorsed on the summons. By the return, it appears that the service was made by the constable on the fifteenth day of March, 1847, and the day appointed for the trial of the cause, as specified in the summons, was the twentieth day of March, 1847. This state of facts as to the service, gives the defendant at the utmost but five days notice. The statute prescribing the mode of procedure, to be observed by justices of the peace in case of nonsuit and judgment by default, where such nonsuit or default is set aside and a new trial granted, requires notice to the opposite party of the setting aside thereof, and that "the notice shall be served on the party or his agent six days before the trial, upon rehearing of the cause." This service is therefore, defective, and the objec-

tion to it would prevail had not the party making it, by his own act, waived it. The record shows that the defendant appeared on the twentieth of March 1847, the day set for rehearing, and by his attorney demanded a jury trial; and that accordingly, a jury was called before the justice, in order to a full trial on the merits. The forms of pleading as observed and required in the practice of the district court, are not necessary in trials before justices of the peace. After the, commencement of a suit before a justice of the peace, the proceedings of the parties may be, and mostly are oral. A proper entry of the material and important motions and acts of the parties concerned, is made in the docket of the justice, for the benefit of the parties in the legal adjustment of their rights. . Here the record of the justice shows that in obedience to the summons, and service thereof, the party appeared, and by his attorney, consented to proceed to a trial of the cause by jury; that after so consenting, he sought to take advantage of the defect in the service of the summons. This he could not do. If he sought to avail himself of this objection, he should have done so before he consented to, or requested the calling of a jury. He might have appeared specially, to object to the service, and then, upon doing so if his objection was overruled, he might have stood on the defence, yielding no consent or acquiescence; and thus avoided a waive of the defect in service. *Conley v. Good*, Breese 96; *Gun v. Wheeler*, 1 Scam. 555. Having consented, and elected to go to the jury with his case, he was bound by such election. His objection was too late. He had waived it.

The second error assigned is that, "after judgment by default had been entered by the justice for costs of suit, he reversed his judgment, and readjudicated the case by granting a new trial." The *Rev. Stat.* 324, § 3, authorises the justice, in case of nonsuit or default, to open the case anew upon a proper showing of the party, within a specified time according to the provisions of the statute. The record of the justice shows no error in this proceeding.

The adjudication of the district court therein, furnishes no ground of complaint for error here.

The third error assigned, is the refusal of the court to give the instruction to the jury, which was asked for by the defendant's counsel, which, as appears by the bill of exceptions was as follows:

The defendant asks the court to instruct the jury "that no trial of the right of property could take place between the parties to this suit, after the property had been sold upon legal process and passed to a third person the purchaser," which instruction was refused by the court, and an exception taken by defendant's counsel.

This proceeding is, by virtue of statutory provision, enacted for the protection of those who might be aggrieved by the officers of the law, seizing under execution process, their property, as the property of defendants, parties in the action and judgment upon which such execution had been issued. This proceeding, as the record shows, having been commenced by the plaintiff against the plaintiff in the execution; and in pursuance of the provisions of the statute, the constable and the execution plaintiff were duly notified of the plaintiff's claim to the property levied on. On the day set for the hearing, the plaintiff was nonsuited and judgment was entered against him for the costs of suit. The property, being a buggy, was in the possession of the constable by virtue of the levy made previously, and of course liable to sale to satisfy the judgment upon which the execution had issued, in the event of the claimant failing to make good his claim by judgment in his favor, in the proceeding under the statute. After the nonsuit, which was entered on the sixth day of March 1847, and, on the eighth day, the same month, the constable in obedience to the mandate of the execution, proceeded and sold the property to one Callowhill E. Stone, into whose possession it was then delivered. On the eleventh day of the same month, the nonsuit was set aside, and a new trial granted by the justice at the instance of the claimant. The question here presented for adjudica-

Hughes *v.* Miller.

tion, is this; Did the property claimed by the plaintiff, in this action, continue to be subject to legal restraint in the hands of the constable, who held it by virtue of the execution and levy thereon, after the nonsuit and judgment for costs, so as to prevent the officer from proceeding to sell it? And did the renewing of the suit, by taking off the nonsuit, render the lien on the property good, by reviving it, as it was at the commencement of the action?

The constable was bound by the requirements of the statute, which prescribes the duties of such officer, when the execution is put into his hands, to proceed promptly to make the money of the defendant by levy, on his goods and chattels. Upon making the levy, he is directed to advertise the property and sell it within a time certain, and to make his return to the justice. The claimant of the property, having availed himself of the provisions of the act of the legislature by notifying the constable of his claim, and the suit having been commenced thereon before the justice, further proceeding under the execution and levy was by law suspended, until the termination of the trial of the right of property, (*Rev. Stat.*, 332, §11.) until the claim of the plaintiff in that proceeding, should be "*abated, dismissed,*" or a final decision had thereon." The record shows that the constable did not proceed to sell the property, until after the action had been disposed of by a nonsuit, and judgment for costs had been entered. Two days afterward he sold the property on the execution, and delivered possession thereof to the purchaser. This he had a right to do. The proceeding by which he had been restrained from selling the property levied on execution, was legally at an end, and the obligations of official duty were upon him. He was not bound to wait until the claimant might, at the last moment allowed by law, have the judgment of nonsuit set aside and his action recommenced. In a proceeding like this, the party seeking the benefit of the statute must be vigilant, and act with due regard for the rights of others interested, and the spirit of the law. The statute providing for the trial of the right of property,

in terms not to be misconstrued, inculcates prompt and speedy action in the adjustment of the rights of the parties. By the entry of the judgment of nonsuit, the claimant was as much out of court, and his proceeding concluded, as if he had not commenced his action. This was the consequence of his own default, and it was his neglect, in not promptly recommencing his action, or opening the judgment of nonsuit, which left the property to be disposed of by the execution process, and thus pass from the possession of the constable; when delivered to the purchaser, it was beyond the reach of the claim of the plaintiff under the provisions of this statute. In view of the spirit of the law, we can see no difference between the termination of the suit by abatement or dismissal, and default or nonsuit. In either case the party might commence again. The statute only holds the property in duress, and restrains the constable from selling, until the termination of the suit by claimant. There could be no certainty that the party claimant would renew the proceeding, more than there was that he might resort to some other mode of redress. In a proceeding like this, interfering with the ordinary process of law, involving the obligations of ministereal officers of the law, and the rights of parties in legal action, strict compliance with the statute, and a vigilant observance of the spirit of the law, should be inculcated.

We are of the opinion therefore, that the court below, erred in refusing the instruction which was asked for, by the defendant's counsel.

Judgment reversed.

*Geo. C. Dixon*, for the plaintiff in error.

*J. A. C. Hall*, for defendant.